IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COREY JAMES CORSON,                  )
                                     )
              Plaintiff,             )
                                     )
       vs.                           )      Civil Action No. 10-236-E
                                     )
MICHAEL ASTRUE,                      )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
              Defendant.             )

O R D E R

AND NOW, this 6th day of March, 2012, upon consideration
of Defendant's Motion for Summary Judgment (document No. 10) filed
in the above captioned matter on February 28, 2011,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion
for Summary Judgment (document No. 7) filed in the above-captioned
matter on January 27, 2011,

IT IS HEREBY ORDERED that said Motion is GRANTED in part
and DENIED in part.  Specifically, Plaintiff's Motion is granted to
the extent that it seeks a remand to the Commissioner of Social
Security ("Commissioner") for further evaluation as set forth below
and denied in all other respects.  Accordingly, this matter is
hereby remanded to the Commissioner for further evaluation under
sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

I.    **Background**

On September 4, 2008, Plaintiff Corey James Corson filed his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Specifically, Plaintiff claimed that he became disabled on September 1, 2007, due to back pain.  (R. 109).

After being denied initially on October 17, 2008, Plaintiff sought, and obtained, a video hearing before an Administrative Law Judge ("ALJ") on September 29, 2009.  (R. 37-38, 23-36).  In a decision dated December 16, 2009, the ALJ denied Plaintiff's request for benefits.  (R. 12-19).  The Appeals Council declined to review the ALJ's decision on July 20, 2010.  (R. 1-6).  On September 22, 2010, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.   **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  See 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  See Matthews v. Apfel, 239

2

F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." Id. at 317.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)) (emphasis in original).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, Step Two of the process requires the Commissioner to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not

4

significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the Commissioner to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At Step Five, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ should consider

5

the claimant's RFC, age, education, and past work experience.  See id.  The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled.  See 20 C.F.R. §§ 404.1523, 416.923.

### III.  **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2008.  (R. 14).  Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that he was disabled on or before that date.  See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits.  In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability.  (R. 14).  The ALJ also found that Plaintiff had the following severe impairments: cervical spondylosis and lumbar degenerative disc disease.  (Id. at 15).  The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three.  (Id.).

At Step Four, the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work.  (R. 15).  Based on this RFC, Plaintiff established that he is incapable of returning

6

to his past employment; therefore, the ALJ moved on to Step Five. (Id. at 18).  The ALJ did not use a vocational expert to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform; the ALJ instead applied Medical-Vocational Rule 201.28 and concluded that Plaintiff was "not disabled."  (Id. at 19).

## IV.  **Legal Analysis**

Plaintiff contends that the ALJ erred in finding that he was capable of performing the full range of sedentary work and was not disabled.  After a review of the record, the Court agrees that a remand is warranted in this case.  Specifically, the Court finds that substantial evidence does not support the ALJ's determination that Plaintiff retained the RFC to sit for six hours a day. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli, 247 F.3d at 40; See also 20 C.F.R. §§ 404.1545(a), 416.945(a).  Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'"  Id. at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where

7

appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); See also SSR 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

In his decision, the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work and did not impose any limitations. In so finding, the ALJ recited Plaintiff's treatment history, referenced his testimony, relied on his Activities of Daily Living ("ADL"), summarized medical opinion evidence regarding X-Ray and MRI results, and determined that Plaintiff was not credible to the extent that his subjective complaints of pain were inconsistent with his RFC. (R. 15-18). The Court finds that the evidence relied upon by the ALJ fails to support his finding that Plaintiff was unlimited in his ability to sit such that he could perform the full range of sedentary work.

First, the ALJ had no basis of support in the record to determine that Plaintiff retained the RFC to sit for six hours out of an eight-hour day, for five days a week.[1] In crafting

---

[1] The regulation provides that, "[i]n order to perform a full

8

Plaintiff's RFC, the ALJ did not make an explicit finding as to the maximum amount of time that he believed Plaintiff was able to remain seated.[2]   The ALJ also did not rely on any specific findings by any acceptable medical sources regarding Plaintiff's ability to sit.  This is because there was no such evidence in the record.  Indeed, none of Plaintiff's treating or examining physicians conducted a functional capacity evaluation and none of them specifically opined as to how long he could remain seated or how well he could perform other work-related demands.  Compare Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).  The record

---

range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2 hour intervals."  SSR 96-9P, 1996 WL 374185 (S.S.A.), at *6.

[2] The Court notes that although the United States Court of Appeals for the Third Circuit ("Third Circuit") does not require the ALJ to perform a rigid "function-by-function" analysis in his RFC assessment, the Circuit did recognize that an ALJ's failure to do so pursuant to SSR 96-8p could constitute error if his RFC determination is not otherwise supported by substantial evidence. Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 149 n.5 (3d Cir. 2007).  In Salles, the Court held that the ALJ did not err when he failed to conduct a "function-by-function analysis," because the ALJ relied upon "specific exertional limitations found by the reviewing physician-who had opined that Salles was capable of medium work-as a point of reference but recognized greater limitations consistent with light work, which gave [the plaintiff] the benefit of the doubt."  Id. at 147-48.  The Court also notes that other jurisdictions do require a function-by-function analysis and regard the ALJ's failure to perform such an analysis as reversible error.  See e.g., Bornette v. Barnhart, 466 F.Supp.2d 811, 815-16 (E.D. Tex. 2006); Williams v. Astrue, 2010 WL 5126208, at *19 (E.D.N.Y. Dec. 9, 2010); Proffit v. Astrue, 2009 WL 315690, at *3 (W.D. Ark. Feb. 6, 2009).

9

does not even contain evidence from a consultative examination because no such examination was performed by a state agency physician in this case. Instead, the ALJ based his RFC determination on the "minimal radiological evidence" in the record and the fact that he did not find Plaintiff's subjective complaints of pain to be that credible. (R. 18). In making his credibility determination, the ALJ appears to have relied heavily on Plaintiff's ADL - which were not indicative of his ability to sit - and selective pieces of his testimony to conclude that Plaintiff could sit much longer - approximately five hours and forty-five minutes longer - than he claimed. This was error. See id. at 1066 ("We decline to conclude that uncertain inferences from appellant's testimony [regarding his ADL] constitute substantial evidence of appellant's ability to sit for six hours in an eight-hour work day.").

Second, in making his RFC determination, the ALJ rejected the only piece of medical evidence that directly related to Plaintiff's ability to sit. On October 19, 2009, Plaintiff underwent a Functional Capacity Evaluation ("FCE") at UPMC Northwest. The FCE was performed by a physical therapist who stated the following with respect to Plaintiff's ability to sit:

> Throughout testing the patient was very consistent with physical abilities and limits. The patient did perform sitting on the edge of chair on left hip supported by the left hand. He did have *difficulty sitting evenly on bilateral hips*. The patient did *require frequent body position changes*. *Tolerating*

10

*functional sitting of 10 to 15 minutes.*  The patient is
able to be in a seated position for longer; however, as
seated before sitting on his left hip. . . . The patient
requires frequent body position changes and negligible
lifting . . . .

The patient would *require brief periods of sitting 10 to
15 minutes separated by brief periods of standing
approximately 10 to 15 minutes as well.*  The patient did
have *difficulty finding a comfortable position.* The
patient had notable edema in low back greater on right
aspect of mid to low back.  This edema did increase as
testing progressed.  The patient would *tolerate
approximately 1 to 2 hours of activity daily.*

FCE Report (Doc. No. 4-7 at 98) (emphasis added).

While the ALJ referenced the FCE report and briefly

summarized it, he failed to mention the segment discussing

Plaintiff's inability to sit for more than 10-15 minutes at a

time.  He rejected the report on the basis that it was

inconsistent with the record and Plaintiff's ADL, and unsupported

by objective test findings and acceptable medical source

statements.  (R. 19).  The ALJ, however, did not explain the

alleged inconsistencies.  While he was free to reject this

evidence, he was required to offer more than a conclusory

statement that the report was inconsistent with other evidence in

the record.  See Cotter, 642 F.2d at 706 ("[T]here is a

particularly acute need for some explanation by the ALJ when s/he

has rejected relevant evidence or when there is conflicting

probative evidence in the record.").  Considering that the report

was the only evaluation of Plaintiff's ability to sit and perform

work-related demands, this Court fails to see how it could

conflict with other medical evidence in the record that did not contain any specific findings as to Plaintiff's ability to perform the physical demands of the workplace. If it is the ALJ's position that the report was inconsistent by omission, in that the other evidence did not mention any sitting limitations, then he was required to state as much. Without an explanation, however, this Court cannot discharge its duty of ensuring that his reasoning is supported by substantial evidence. See id. at 706-07 ("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

The ALJ rejected the FCE report on the additional basis that it was unsupported by objective test findings and an acceptable medical source statement. (R. 17-18). The report, however, specifically described the various tests that Plaintiff performed and detailed the accompanying results.[3] It is unclear as to how these tests and their results do not constitute "objective test findings," and the ALJ fails to offer any explanation. Furthermore, the FCE report was not required to be supported by an acceptable medical source statement because a therapist is

---

[3] For example, Plaintiff completed "Maximum Voluntary Effort Testing" and "demonstrated good consistency throughout all levels and demonstrating a bell shaped curve"; Plaintiff completed the "Rapid Exchange Grip Test on Level 3 with good consistency and accuracy"; Plaintiff "demonstrated negative Waddell Testing indicating no symptom magnification," among other tests. (Doc. No. 4-7 at 97-99).

considered an "other source" under the regulations and their
reports are entitled to consideration as relevant evidence,
especially when the reports "show the severity of an individual's
impairment and how it affects the individual's ability to
function." SSR 06-03p, 2006 WL 2329939 (S.S.A.), at *2. Given
the fact that the FCE report assessed the severity of Plaintiff's
back pain and how it affected his ability to sit and perform other
work-related tasks, as well as the fact that it constituted the
only assessment of Plaintiff's work-related abilities in the
record, the report was highly relevant and the ALJ erred by not
giving it due consideration as additional relevant evidence.

Moreover, the Court finds that the ALJ cherry-picked pieces
of Plaintiff's testimony that were favorable to his decision and
failed to include critical testimony regarding his ability to sit
in making his RFC determination. The ALJ recited how Plaintiff
presented to the hearing using a cane, testified that he required
it for support and balance, indicated that he is able to do only
minor household chores and activities, stated that while he has
tried physical therapy and injections he only finds relief through
medication management, and noted that the medication made him
drowsy. ALJ Determination (Doc. No. 4-2 at 17). The ALJ then
said: "[t]he claimant stated that he is able to stand for up to 20
minutes, walk approximately ½ block, and lift up 20 pounds
occasionally. He insisted that postural activity exacerbates his

pain."  (Id.).  Glaringly absent from the ALJ's recitation of
Plaintiff's physical abilities is Plaintiff's testimony regarding
his inability to sit for prolonged periods of time.

At the hearing, Plaintiff's attorney had questioned him as
to whether he could work in an occupation that allowed for a
sit/stand option at will.  Hearing Transcript (Doc. No. 4-2 at
30).  Plaintiff testified that even if he was provided with such
an opportunity, he "definitely [would] not" be able to perform
that job for eight-hours a day, five days a week.  (Id.).
Specifically, he testified, "I couldn't carry myself that long,
even by noon my day's about done and I've, I've had it."  (Id.).
When asked where he could be found from "noon onward," Plaintiff
replied, "in his bed," stating that he spends approximately nine
hours out of his day there.  (Id. at 31).  Plaintiff also
clarified that on a typical day, he is only able to wash "a few
dishes," walk the dogs "just across the street," and cook dinner
if he can, but said that he is "usually not" able to.  (Id.).
Approximately eight to ten minutes into the hearing,[4] he testified
that he would not be able to sit in a chair for "another two to
three minutes" before he would have to get up and move around.
(Id. at 35).  His attorney commented that he could see Plaintiff
bracing himself in his chair with his left hand, and Plaintiff
replied that he had to do so in order to keep the weight off of

---

[4] The hearing was only 12 minutes long.  (Doc. No. 4-2 at 24-37).

his left hip.[5] (Id.). When asked whether he would be able to put his hands in front of him and sort a deck of cards, Plaintiff responded that he would not be able to do that because he would not be able to sit for that long without having to brace himself for support. (Id.). The ALJ's failure to include this highly relevant testimony and reconcile it with his RFC finding constitutes error. See Cotter, 642 F.2d at 707 (holding that an ALJ's failure to "explain his implicit rejection of this evidence or even to acknowledge its presence" constitutes error).

Finally, the Court fails to see the alleged inconsistency between the FCE report and Plaintiff's ADL and finds that the ALJ placed unnecessary reliance on Plaintiff's ADL in concluding that he was able to sustain regular, full-time employment. Plaintiff's activities of "feeding and watering the dogs, taking the dogs for walks, washing clothes, washing dishes, preparing and cooking meals, cleaning the house, and regular household maintenance," are activities that involve negligible lifting and are all generally performed standing up; they do not indicate an ability to sit for prolonged periods of time and the ALJ "did not explain what aspect of [Plaintiff]'s daily routine persuaded him to believe that

---

[5] The Court also notes that this is consistent with the notation in the FCE report regarding Plaintiff's need to brace himself with his left hand in order to keep his weight off of his left hip. FCE Report (Doc. No. 4-7 at 98) ("The patient did perform sitting on the edge of chair on left hip supported by the left hand.").

Plaintiff] could sit for longer than he professed he could."
Mason, 994 F.2d at 1066.

The present facts are distinguishable from those in Milano v.
Comm'r of Soc. Sec., 152 Fed. Appx. 166 (3d Cir. 2005), where the
Court upheld the ALJ's finding that the plaintiff's ADL indicated
an ability to sustain regular, full-time employment.  The
plaintiff "lived alone, was capable of shopping and completing
household chores, and engaged in activities such as driving,
visiting friends, and going to movies."  Id. at 171.  The Court
also noted that "the ALJ pointed out that she was not taking any
prescription medication for pain, and had refused medication that
had been prescribed to her for depression. Other treatments
recommended by physicians were quite conservative: physical
therapy and acupuncture, but not surgery."  Id.

Here, Plaintiff did not live alone and required the
assistance of his wife and kids to perform the majority of the
household chores.  While he was able to perform very minor tasks
such as washing a few dishes and feeding and walking his dogs
across the street, Plaintiff was not able to perform the full
range of household activities and found himself back in bed by
noon because of his back pain.  Unlike the plaintiff in Milano,
Plaintiff was taking several prescription medications, and the
record supports his position that even the prescription medication
did not provide him the necessary relief from the pain.

Plaintiff's treatment history was not conservative, as the record documents his persistent attempts to seek relief from physical therapy, pain management clinics, injections, and a nerve block procedure.

Regardless, even if Plaintiff was capable of engaging in the full range of the activities recited by the ALJ, it still does not demonstrate that he is capable of a higher level of functioning than he claims as all of the activities are generally performed standing up and none require heavy lifting or prolonged sitting, standing, or walking. Similarly, even if Plaintiff's activities did contemplate *some sitting*, the question is not whether he can endure any sitting at all, but whether he is able to sit for six hours a day. The Court finds that Plaintiff's ADL did not provide support for the ALJ's conclusion that he was so able. Stoesser v. Comm'r of Soc. Sec., 2011 WL 381949, at *7 (N.D.N.Y. Jan. 19, 2011); see also id. ("[I]t is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'") (quoting Woodford v. Apfel, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000)).

Against this backdrop, the Court finds that the evidence relied upon by the ALJ in support of his RFC determination is insufficient to support his conclusion that Plaintiff is able to

17

perform the full range of sedentary work. See Mason, 994 F.2d at 1066. The record clearly demonstrates limitations in Plaintiff's ability to sit for six hours a day. Given the great likelihood that he would, at the very least, require a sit/stand option, the use of the grids would be inappropriate. See Jesurum v. Sec. of Health & Human Serv., 48 F.3d 114, 120-21 (3d Cir. 1995); see also SSR 96-9p, 1996 WL 374185 (S.S.A.), at *7 (discussing how the need to alternate between sitting/standing erodes the occupational base). The ALJ is encouraged to enlist the services of a vocational expert on remand to determine the extent of any occupational base erosion.[6]

## V.   Conclusion

In short, the record lacks substantial evidence to support the ALJ's finding that Plaintiff was capable of sitting for six hours out of an eight-hour work day, and accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:     Counsel of record

---

[6] In light of this Court's ruling, Plaintiff's motion to remand based on new evidence (e.g., Dr. Nesbitt's letter stating that he had no reason to disagree with the physical therapist's findings in the FCE report) is moot.